Action to recover of defendant the value of certain unregistered Liberty Loan Bonds, owned by plaintiff, and placed by him in a safety deposit box, rented from defendant, for the safe-keeping of valuable papers and securities; said safety deposit box was one of many similar boxes, placed and kept in the vault, in defendant's bank building, and rented to its customers. On 6 November, 1920, plaintiff called at defendant's bank, and then and there demanded the delivery to him of said bonds; defendant failed to deliver same to plaintiff in accordance with said demand, and has since failed to deliver said bonds to plaintiff; in his complaint, plaintiff alleges that said bonds were lost, destroyed or taken from defendant's bank, on 5 November, 1920, as "the result of defendant's carelessness, negligence, imprudence and incautiousness in protecting, keeping and preserving said bonds."
The vault in defendant's banking house, in which said safety deposit box was placed and kept, was entered during the night of 5 November, 1920, by burglars; said burglars, by means of high explosives, blew open the steel door of said vault, and violently and forcibly broke open various of the safety deposit boxes therein, and took and removed therefrom the contents of said safety deposit boxes; each of said safety deposit boxes was provided with a lock, the key to which was delivered to the customer at time the said box was rented to him; the locks of all said safety deposit boxes, however, were controlled by a master-key which was retained by defendant; the key to each box was retained by the individual customer to whom same was rented; no safety deposit box could be unlocked and opened without the use of both the individual key, which was in the possession of the customer, and the master key, which was in possession of defendant; defendant did not know and had *Page 211 
no means of knowing the contents of the several safety deposit boxes in the said vault; as a result of the burglary, many valuable papers and securities were stolen from said safety deposit boxes by the burglars, none of which have been recovered by defendant; defendant, in its answer, expressly denied that it was negligent with respect to said safety deposit boxes or with respect to the contents of the same; it denied that the said burglary was the result of any negligence on its part, and expressly alleged that its bank building was equipped with "standard modern steel and concrete vaults and with all other reasonable, approved and accepted devices and equipment to assure safety from fire and to protect, as far as might be, from theft and burglary"; that the safety deposit boxes provided for its customers were placed inside "its steel-doored, concrete, safety-locked vault"; and that "on the night of 5 November, 1920, the defendant's bank vault, safes and doors, having all been therefore securely locked and bolted with combination safety locks, burglars, apparently professionals and highly skilled in the use of high explosives, with dynamite, nitro-glycerine, T.N.T., or some other powerful explosive, blew out the heavy steel door of the bank's vault and effected an entrance thereto; that they then violently and forcibly broke open various of the safety deposit boxes" and stole the contents of same.
At close of evidence offered by plaintiff, defendant moved for judgment as of nonsuit. This motion was denied, and defendant excepted. Defendant then offered evidence. At the close of all the evidence, defendant renewed its motion for judgment as of nonsuit. Motion allowed. From judgment in accordance with said motion, plaintiff appealed. The only assignment of error is based upon the judgment as of nonsuit.
Plaintiff insists that there was error in allowing defendant's motion for judgment as of nonsuit, and in rendering judgment in accordance with said motion, for the reason:
First, that there was evidence of a special contract between plaintiff and defendant, by virtue of which defendant became responsible as an insurer for the safe-keeping and return of said bonds;
Second, that the relationship of plaintiff and defendant, with respect to said bonds was that of bailor and bailee, and that, as the evidence tended to show that the bonds, the property of plaintiff, were delivered by him into the possession of defendant, under a contract of bailment, and that defendant had failed to return them to plaintiff, upon his demand, the burden was upon defendant to establish, by evidence, facts *Page 212 
which, under the law, relieved him of liability for the return of the bonds or for damages for failure to return same.
The decided weight of authority is to the effect that the relationship between a bank and its customer, resulting from the rental by the former to the latter of a safety deposit box, with respect to the contents of said box, placed therein for safe-keeping, is that of bailor and bailee, the bailment being for hire or mutual benefit. Trustees v. Banking Company,182 N.C. 298, 17 A.L.R., 1205; the fact that the safety deposit box can be unlocked and opened, and access had to its contents, only by the joint action of the customer, who has possession of the individual key, and of the bank, which has possession of the master key, does not affect the character of the relationship. The ownership of the property deposited in the safety deposit box remains in the customer; under the contract it must be kept in the place designated and agreed upon by the parties, to which access can be had only by their joint action; the place in which the property shall be kept is not to be determined solely by the bank. This is the only element of the contract which seems to differentiate it from a pure bailment as defined by the text-writers and approved by judicial decisions. Hail on Bailments; Dobie on Bailments; 3 R. C. L., 72; 6 C. J., 1084. This element is not sufficient to affect the relationship between the parties, and it must be held, both upon authority and upon principle, that the relationship between the parties to this action, with respect to the bonds, was that of bailor and bailee, for mutual benefit.
Cussen v. Southern California Savings Bank, 133 Cal. 534,65 P. 1099, 85 Am. St. Rep., 221; Reading Trust Co. v. Thompson,254 Pa., 333; Safe Deposit Co. v. Pollock, 85 Pa., 391; The National SafeDeposit Co. v. Stead, 250 Ill. 584; Young v. Bank, 265 S.W. 681;Trainer v. Saunders, 270 Pa., 451, 113 A. 681, 19 A.L.R., 861.
The interesting suggestion is made by counsel for defendant, in their brief, that the relationship between a lessor bank and a lessee customer, with respect to a safety deposit box, on principle, is that of landlord and tenant, and that the bank's possession of the contents of the box is analogous to the possession which a landlord has of the contents of the house which he has rented to his tenant. It is conceded that the greater weight of authority sustains the proposition that the relationship is that of bailor and bailee. Under a contract by which the relationship of landlord and tenant is established, both title to and possession of the subject-matter of the contract is transferred to the tenant, during the term of the lease. During said term, the landlord has no rights or duties as between himself and his tenant with respect to the property leased. The contract between the bank and its customers does not affect the title to the property, which remains in the customer, but *Page 213 
does result in the transfer of possession to the bank. The suggestion is interesting but not persuasive. See, however, Dobie on Bailments, page 166.
It was the duty of defendant as bailee of the bonds delivered to it by plaintiff, under a contract of bailment, for the mutual benefit of the parties, to use ordinary care and diligence in safeguarding the bonds, the property of plaintiff, bailor, and to return same to plaintiff, upon his demand. If it failed to return the bonds, and such failure was the result of a breach of duty imposed by law by reason of the relationship growing out of the contract of bailment, it is answerable to plaintiff in damages. If its failure to return the bonds, however, was not due to breach of such duty, i. e., negligence, it is not liable to plaintiff for the loss of said bonds, for the law does not hold defendant, as a bailee, liable as an insurer; 3 R. C. L., 96. It is liable only for loss resulting from its failure to exercise the care required by law of a bailee with respect to the property bailed.
In Beck v. Wilkins, 179 N.C. 231, Clark, C. J., says: "The defendant, as bailee, assumed liability of ordinary care for the safe-keeping and the return of the machine to the bailor in good condition. The bailee did not assume liability as insurer, and therefore did not become liable for the nonreturn of the property in good condition, if he observed the ordinary care devolved upon him by reason of the bailment." In Hanes v. Shapiro,168 N.C. 24, Justice Walker says: "The parties may enlarge or diminish their liability by special contract, provided, first, that the contract is not in violation of law or against public policy; second, that the liability of the bailee is not to be enlarged or restricted by words of doubtful import; and third, that the bailee must exercise perfect good faith at all times." If the bailor seeks to hold bailee liable as an insurer, under a special contract, he must both allege and prove the special contract.
In his complaint, plaintiff alleges that he was "induced to rent the said safety deposit box and to deposit or place therein the said Liberty Loan Bonds by the advertisement and representations of defendant bank that it carried burglary insurance and that any valuables deposited in said safety deposit box would be protected by said burglary insurance." This is the only reference in the complaint to insurance against burglary; it is not an allegation of a special contract by which defendant assumed liability as an insurer of the contents of the safety deposit box or became responsible for their return. In Sams v. Cochran, 188 N.C. 731, there was both allegation and proof of a special contract.
Even if it be conceded that under the rule uniformly enforced by this Court for the consideration of evidence upon a motion to nonsuit, there was evidence of a special contract made with plaintiff by the cashier *Page 214 
of defendant, and that defendant was bound by said contract, there was no error in allowing the motion, for nonsuit, upon the ground first insisted upon by plaintiff, for it is elementary that there must be allegation as well as proof to sustain a cause of action. Green v. Biggs, 167 N.C. 417;Tally v. Granite Quarries Co., 174 N.C. 445.
Plaintiff's assignment of error must, therefore, be considered upon the basis of defendant's liability to plaintiff for the bonds, as a bailee for him, without any additional liability because of a special contract. When the plaintiff rested, there was evidence from which the jury could find (1) that there was a contract of bailment between plaintiff and defendant, with respect to the bonds; (2) that the bonds had been delivered to defendant by plaintiff, under this contract; (3) that defendant had failed to return the bonds to plaintiff upon his demand for such return. This evidence made a prima facie case for plaintiff, for although plaintiff could not recover of defendant the value of the bonds, without a finding by the jury that defendant's failure to return the bonds was the result of negligence on the part of defendant, as alleged by plaintiff, the facts which the evidence tended to establish, with the permissible inferences which the jury might make from these facts, were sufficient to establish negligence. There was no error therefore in refusing defendant's motion at the close of the plaintiff's evidence for judgment of nonsuit.
The burden of proof, however, did not shift to defendant. This remained with the plaintiff. The evidence, making a prima facie case for plaintiff, was sufficient to take the case to the jury with the burden of the issue still upon plaintiff. Defendant had the option to take the risk of an adverse verdict, or to offer evidence to rebut the prima facie case for the plaintiff; Hunt v. Eure, 189 N.C. 482, and cases there cited and reviewed by Justice Varser. Defendant exercised the option by offering evidence. At the close of all the evidence, it renewed its motion for judgment of nonsuit (C. S., 567), contending that the prima facie case for plaintiff had been rebutted by evidence which was uncontradicted.
Upon all the evidence it appears that the bonds were stolen by burglars from the safety deposit box in which they had been deposited, during the night of 5 November, 1920; that the said box at the time the bonds were stolen was inside the vault, in defendant's bank building; that the steel door to the vault had been blown open by the use of high explosives; that the safety deposit boxes had been opened by the use of a sledge hammer and punch and a cold chisel; that the jacket or envelope in which the bonds had been placed was found, but the bonds were missing. *Page 215 
There was also evidence that the equipment used by defendant was of recognized, standard make, and reasonably safe, in the opinion of expert bankers; that said equipment was the same used by banks in towns of like population as Spring Hope; that the safety deposit boxes of defendant were of standard make and similar to those used in banks located in larger towns.
There was no evidence to the contrary. The facts established by all the evidence are undisputed. The inference of negligence arising from the failure to return the bonds upon plaintiff's demand is rebutted. The only inference to be drawn from all the undisputed evidence is that the failure to return the bonds was due to the burglary, and that said burglary was not the result of the negligence of defendant; Hinnant v. Power Co.,187 N.C. 288; Justice Clarkson, writing the opinion for the Court in that case, approves the principle that where the facts are undisputed and but a single inference can be drawn from them it is the exclusive duty of the Court to determine whether a loss or injury is the result of negligence.
No facts can be found from the evidence in the record, and no inference can be drawn from the facts established by the undisputed evidence, upon which the Court could hold as a matter of law that defendant's failure to return the bonds, deposited with it as bailee, was due to its failure to exercise ordinary care for the safe-keeping of the contents of the safety deposit box, in which, under the evidence, plaintiff's bonds were on deposit on the night of 5 November, 1920, when same were stolen by burglars, who entered said vault after blowing the steel door open by high explosives, and who then broke into the safety deposit box by the use of a sledge hammer and cold chisel. The judgment based upon motion for nonsuit, which was allowed at the close of all the evidence, is
Affirmed.